United States District Court
District of Arizona

Jeremy Pinson,
Plaintiff,

v.

Michael Carvajal, et al.,
Defendants

Case No. 22-CV-00298-RM

FILED ___ LODGED
RECEIVED ___ COPY
MAR 16 2023
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

Emergency Motion For A Preliminary Injunction

Comes now the plaintiff, proceeding pro se, and seeks a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) and TRO pursuant to Fed.R.Civ.P. 65(b) for the reasons set forth herein.

I. Statement of Facts

The plaintiff is a transgender female housed in USP Tucson. (Ex.1, Pinson Decl.). BOP classifies inmates pursuant to its 2006 Program Statement 5100.08, using male or female rules and procedures outlined therein. (Ex.1, Att.A). That policy outlines classifications ranging from Male Only, to Female Only, or both. (id.). Upon entering BOP custody in 2007 BOP used the plaintiff's external genitalia to choose whether to use its "Male" or "Female" procedures in 5100.08, and used "Male" both then, and in every classification since. (id.). In cisgender male facilities, plaintiff has been raped, beaten, stabbed, choked, sexually harrassed, mocked, taunted, degraded and demeaned by cisgender men since 2007. (Ex.1). She has tried to commit suicide repeatedly and suffers from a long history of trauma in cisgender male prisons. (id.). But for her gender assigned at birth she would never have set foot into a cisgender male prison in 2007. (id.).

-1-

## II. Standards of Review

Generally, "to state a claim... for violation of the Equal Protection Clause... a plaintiff must show that defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

To get an injunction you must show "either (1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and balance of hardships tipping in [her] favor." Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005). Likelihood of success means "better than negligible chance of succeeding." Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

## III. Discussion

### A. Likelihood of Success/Irreparable Injury

In Bostock v. Clayton County, the Supreme Court ruled that to discriminate against transgender people is a form of sex discrimination just like discrimination against women or men. 140 S.Ct. 1731 (2020).

Discrimination against transgender people who are a quasi-suspect class should receive Heightened/Intermediate Scrutiny. See, Karnoski v. Trump, 926 F.3d 1180 (9th Cir. 2019); Hecox v. Little, No. 20-CV-00184-DCN, 2020 WL 4760138 (D. Idaho, Aug. 17, 2020).

In Tay v. Dennison, 457 F. Supp. 3d 657 (S.D.Ill. 2020) a court granted a preliminary injunction to a transgender woman who challenged her placement in men's prisons where she was abused and attacked under the Eighth Amendment and Equal Protection Clause. See also, Doe v. Massachusetts Dept. of Corr., No. CV-17-12255-RGS, 2018 WL 2994403 (D. Mass., June 14, 2018)(same) and Shaw v. District of Columbia, 944 F. Supp. 2d 43 (D.D.C. 2013).

2

Importantly, the Shaw district court reasoned that transgender women are just like any other women, so placing them in men's prisons clearly violated the law.

The safety risks of housing transgender women in men's prisons are by now well-recognized. See, e.g. Williams v. Kincaid, 45 F.4th 759 (4th Cir. 2022); Powell v. Schriver, 175 F.3d 107, 115 (2d Cir. 1999); Doe v. District of Columbia, 215 F.Supp.3d 62, 76 (D.D.C. 2016).

Congress in 2003 passed the Prison Rape Elimination Act that, inter alia, led to the promulgation of national standards that require transgender inmates (1) not be housed or classified based solely on their external genital anatomy, (2) be given serious consideration to their own preferences regarding housing and safety, (3) review their housing placements at least twice a year. See 28 C.F.R. 115.42.

BOP's Inmate Designation and Classification Program Statement 5100.08 classifies BOP inmates on the basis of sex. Some of those are listed below:

1. Point scores and security level institutions are different and based on being "Male" or "Female" (Ex. 1, Att. A).

2. Public Safety Factors are applied also on the basis of being "Male" or "Female" (id., Att. B). For example, a "Male" inmate can be given a "Greatest Severity Offense" public safety factor and housed in "at least a Low security level institution" (id.). A female cannot. A female can be given a "Violent Behavior" public safety factor. (id.). A male cannot. (id.). Some public safety factors apply to both sexes, such as Sex Offender, Deportable Alien, etc. (id.).

3. Security Designation Tables exist for "Males" (Ex. 1, Att. C) and a separate one for "Females" (id., Att. D).

4. A "Custody Variance Table" exists for "Male" inmates (Ex. 1, Att. E) and a separate one for "Female" inmates. (id.).

Beginning in 2007 and continuing on until the present, the BOP has utilized a "Male Custody Classification Form" the most recent being Nov. 19, 2022 (Ex. 1, Att. F) when BOP began processing her for placement in the Allenwood Secure Administrative Unit in Pennsylvania — a Male Only facility. (Ex. 1 at 7). All her Points and Public Safety Factors ("PSF") have been calculated since 2007 using "Male" policy rather than "Female". (id). In fact, plaintiff has 25 points, which if she were being treated as Female would classify her as Low Security. (Ex. 1, Att. D). She could not have been given a "Greatest Severity" PSF (Ex. 1, Att. B)(it is also an invalid classification even under the Male version of the Appendix A "Offense Severity Scale" to P.S. 5100.08, as an "Threatening Communications" offense is High Severity but not Greatest Severity, See Ex. 1, Att. G). Plaintiff's "Male Custody Classification Form" is identical to that of cisgender males. (See Ex. 2, Zaragosa-Solis Decl., Att. A).

Further evidence of the role of sex-based discrimination is BOP's "Female Offender Manual" (Ex. 3) which outlines programs not available in Male facilities. Male offenders do not have a "Male Offender Manual". Other examples abound, for example plaintiff is subjected to cross-gender strip searches which are prohibited in female facilities. Prison jobs available to female offenders, not available in the male-only Allenwood Secure Admin Unit, are not available to plaintiff either, also

because BOP has and continues to treat her as Male under Program Statement 5100.08 which it has done since 2007. In fact, plaintiff is misgendered with the pronouns "he/him" in her medical, psychology, Central and SIS files. (Ex. 1).

In Johnson v. California, the Supreme Court held that prison racial discrimination is subject to strict scrutiny, and that state actors must prove that racial classifications "are narrowly tailored measures that further compelling governmental interests," even when prison officials claim they are necessary to control violence. 543 U.S. 499, 506-15 (2005)(citing, in part, Lee v. Washington, 390 U.S. 333 (1968)).

Prisoners are also protected by Title VII of the federal Civil Rights Act, 42 U.S.C. 2000e. See, Baker v. McNeil Island Correctional Center, 859 F.2d 124, 127-28 (9th Cir. 1988).

In cases of gender discrimination the heightened scrutiny test requires prison officials provide "parity of treatment." See, e.g. Glover v. Johnson, 478 F.Supp. 1075, 1079 (E.D. Mich. 1979)(finding that vocational programs for men were more numerous and more likely to provide marketable skills); Clarkson v. Coughlin, 898 F.Supp. 1019, 1043 (S.D.N.Y. 1995)(Unit for Men but not Women denied equal protection); Casey v. Lewis, 834 F.Supp. 1477, 1550-51 (D. Ariz. 1993); McCoy v. Nevada Dept. of Corr., 776 F.Supp. 521, 523 (D. Nev. 1991).

Title IX of the Education Amendments of 1972 also prohibits gender discrimination. 20 U.S.C. 1681(a). Prisons are within Title IX's scope. See, Jeldness v. Pearce, 30 F.3d 1220, 1224-25 (9th Cir. 1994).

Under Bostock, the Supreme Court has explicitly as well as implicitly ruled that transgender persons should be treated

5

like any other gender for purposes of sex discrimination, Plaintiff should be treated like any other female in the BOP. See, Shaw v. District of Columbia, 944 F. Supp. 2d 43 (D.D.C. 2013). She should not be subject to cross-gender strip searches, See, Byrd v. Maricopa Cnty. Sheriff's Dep't., 629 F.3d 1135 (9th Cir. 2011); Schneider v. San Francisco, No. 97-CV-02203 (N.D. Cal. 1999); Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987). From her first day in prison, P.S. 5100.08's sex based rules have been applied to plaintiff as a "Male" offender based solely on her external genital anatomy. Even when BOP added PREA regulations, the Transgender Offender Manual (P.S. 5200.04) and Female Offender Manual (P.S. 5200.02), the BOP has continuously used "Male Classifications" and has never used "Female" policies upon plaintiff.

Even access to Gender Confirmation Surgery, the Ninth Circuit has recognized as a "medically necessary treatment" (Edmo v. Corizon, Inc., 935 F.3d 757 (9th Cir. 2019)) is available only in female institutions as BOP admitted in Pinson v. Dept. of Justice, No. 19-CV-00235-RM (D.Ariz.).

Plaintiff's housing, classification, job and program eligibility has been guided by her sex since 2007 as BOP has never ceased using its 2006 policy for "Male" and "Female" inmates to classify her (Ex. 1, Att. F) as it does any other cisgender male, (Ex. 2, Att. A), on the basis of sex. The "Male" sex, though plaintiff is a trans woman and should be treated according to Bostock like any other woman.

6

A transgender inmate, like any other, may report sexual abuse or harrassment ~~to~~, 28 C.F.R. 115.51, and are entitled to the protection of the BOP, 28 C.F.R. 115.62, as well as protection from retaliation, 28 CFR 115.67. The BOP refuses to house the plaintiff in a female facility, though numerous studies by the federal government reveal transgender inmates are ten times more likely to be assaulted in prison (See, DOJ Bureau of Justice Statistics, Sexual Victimization Among Transgender Adult Inmates, Sexual Victimization in Prisons and Jails 2011-12 (2014)) and fifty-nine percent of transgender inmates in men's prisons are sexually assaulted. (see, Williams v. Kincaid, Citing Valerie Jenness et al., Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault 2, U.C. Irvine Ctr. for Ev.-Based Corrections (2007)(available at https://cpb-us-e2.wpmucdn.com/sites.uci.edu/dist/0/1149/files/2013/06/BulletinVol2Issue2.pdf)).

On Sept. 14, 2022 the plaintiff was attacked when the USP Tucson Warden Mark Gutierrez intentionally released Tyrone Brown from SHU where he had been housed pursuant to 28 C.F.R. 115.62 to protect plaintiff from his sexual misconduct and threats. (Ex.1) Brown tried to murder plaintiff. (id.). He severely injured several inmates in the process. (id.). On or about March 6, 2023 plaintiff spoke with the PREA Auditors of America, and American Corr. Association, about the ongoing abuses in USP Tucson (id.) the Auditor told plaintiff "Im sorry to hear this, alot of inmates are telling me the same thing about PREA non-compliance and the retaliation against victims." (id.)(also, Ex.2). Less than an hour later plaintiff asked Warden Gutierrez why he hated her and was abusing his SHU and transfer powers against her and he

7

stated to her:

"I read up on you, you're a victim everywhere you go, and you file PREA's making my staff work, and I just don't care how you feel, man up be a man and fight your battles instead of being a coward filing a PREA everytime someone hurts your feelings, its really disgusting to see such a big man acting like this, you have a dick and are in a man's prison. I'm sending you to the Secure Admin in Allenwood and you will go home from there and I'll be free of a crybaby always filing shit when people hurt you."

(See Ex. 1 and 2). The Warden's statement mirrors the testimony of other USP Tucson inmates Daniel McNeal (Ex. 3) and John C. Dobbs. (Ex. 4). The Warden has also moved to obstruct an OIG investigation begun by another inmate. (Ex. 2, Att. B). Warden Gutierrez statements not only violate BOP policies and regulations, they exhibit a discriminatory, biased, and bigoted view of transgender victims of violence in dangerous men's prisons. These facts establish likelihood of success under the Fifth And Eighth Amendments. As well as PREA regulations and Sec. 1557 of the Affordable Care Act, as codified at 42 U.S.C. 18116.

Furthermore, the evidence comports with the notion that irreparable injury will occur if he is allowed to continue. See, Elrod v. Burns, 427 U.S. 347, 373 (1976) (continuing violation of constitutional rights is an irreparable injury). As such the First prong of Warsoldier is met.

8

IV. Request for Evidentiary Hearing and Witnesses

The plaintiff, unfortunately, is not alone in terms of being victimized on the basis of sex, sexually abused in BOP custody. An evidentiary hearing is necessary as plaintiff has no means of obtaining their testimony without an attorney due to inmates not being allowed to correspond with others making their declarations beyond plaintiff's reach. Plaintiff seeks to call:

1. Deputy Federal Public Defender Andrew Talai (C.D.Cali.) can testify to reporting to the BOP plaintiff feared for her life from the sexual predator Tyrone Brown several times before 9-14-2022.

2. Jeremy Sears, can testify to being choked and raped, and told by USP Tucson staff to not file a PREA on his attacker.

3. Nicole Marie Johnson, can testify SIA Gallion encouraged her to prostitute herself to obtain intelligence on illicit activities in USP Tucson, in violation of PREA.

4. William Fly, can testify to being sexually assaulted and then threatened to withdraw her PREA or face retaliation, at USP Tucson.

5. Pam Sonnen, PREA Auditors of America, can testify to the multitude of inmates complaining of PREA non-compliance and retaliation at USP Tucson.

6. Nicholas Wilcox, can testify to being beaten up after filing a PREA complaint at USP Tucson when staff labelled him a snitch.

9

7. Michael Horowitz, DOJ Inspector General, can testify to his 2022 letter to BOP Director complaining of systemwide non compliance with PREA and manipulating investigations for improper purposes, using improper methods, including at USP Tucson.

The plaintiff has dozens of additional witnesses willing to testify about how they were sexually abused, and then retaliated against for reporting their abusers, if the Court wishes to hear from them also.

## Conclusion

The BOP has no definition for its classification of its own inmates as "Male" or "Female", in any of its policies or its regulations. In practice and customy, a prisoner with a penis is treated as "Male", and "Female" if they have a vagina. No female inmate has ever been housed in a cisgender male prison, ever, and the BOP has never initially designated an inmate with male genitalia in a female prison. BOP has never classified plaintiff using "Male" guidelines in P.S. 5100.08 even a single time since 2007. BOP policy is different for the sexes. And is discriminatory on the basis of sex if Bostock has any real meaning. Plaintiff could not be housed at USP Tucson, nor the solitary confinement of SMU Allenwood, if she had a vagina or was treated by the BOP under its policy for "Female" inmates. The use of rules promulgated for "Male" inmates in 2006 has been applied ever since, not once was the "Female" system applied to plaintiff since 2007. It is an unconstitutional use.

10

Plaintiff has therefore satisfied the requirements for a preliminary injunction under the Ninth Circuit's decision in Warsoldier. As such, this Motion should be Granted.

Wherefore, plaintiff requests that this Court:

1. Issue a TRO prohibiting plaintiff's transfer to the Allenwood Secure Admin. Unit;

2. Issue a preliminary injunction requiring BOP to treat plaintiff under its policies and regulations as it treats "Female" inmates in those policies and regulations.

_____
Jeremy Pinson

11