1

ASH

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9    Jeremy Pinson,                          No.    CV 22-00298-TUC-RM

10                      Plaintiff,

11   v.                                       **ORDER**

12   Michael Carvajal, et al.,

13                      Defendants.

14

15          On June 29, 2022, Plaintiff Jeremy Pinson,[1] a serial litigant[2] who is confined in the

16   United States Penitentiary in Tucson, Arizona ("USP-Tucson"), filed a pro se civil rights

17   Complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of*

18   *Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and, after being directed to do so, an

19   Application to Proceed In Forma Pauperis.  Subsequently, Plaintiff also filed a Motion for

20   Preliminary Injunction.  In an October 25, 2022 Order, the Court granted the Application

21   to Proceed, denied the Motion for Preliminary Injunction, and dismissed the Complaint

22   because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an

23   amended complaint that cured the deficiencies identified in the Order.

24          Subsequently, Plaintiff filed a First Amended Complaint and a Motion for

25   Reconsideration contesting the Court's October 25, 2022 denial of her Motion for

26   _____

27          [1] Plaintiff states she is a transgender woman and uses female pronouns.  The Court
     will do the same.

28          [2] Plaintiff has filed or been a party to hundreds of civil suits in various federal district
     and appellate courts across the country.

Preliminary injunction.  By Order dated February 7, 2023 Order, the Court denied the Motion for Reconsideration and dismissed the First Amended Complaint because Plaintiff had again failed to state a claim.  The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

Plaintiff has now filed a Second Amended Complaint.  (Doc. 14.)  Plaintiff has also filed the following:

- a Motion for Limited Appointment of Counsel (Doc. 15);
- a Motion to "Renew/Reconsider Injunction" (Doc. 16);
- a "Motion Concerning PLRA Screening of Complaint" (Doc. 17);
- an "Emergency Motion for a Preliminary injunction" (Doc. 18);
- a Motion to "Amend/Supplement" the Second Amended Complaint (Doc. 19);
- a combined Motion to "Withdraw" the Motion to Amend/Supplement and to Seal (Doc. 20), with which she has lodged several exhibits (Doc. 21); and
- a Motion to Expedite Screening (Doc. 22).

The Court will grant Plaintiff's Motion to Withdraw to the extent she seeks to "withdraw" her earlier request (in Doc. 19) to amend her Second Amended Complaint.  As such, Plaintiff's Motion to Amend will also be denied as moot.  The Court will order Defendant Bureau of Prisons to answer Counts One, Two, and Three of the Second Amended Complaint; dismiss Count Four and the remaining Defendants without prejudice; and deny the remaining Motions.

I.    **Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

. . . .

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

## II.     Second Amended Complaint

In her four-count Second Amended Complaint, Plaintiff names the Federal Bureau of Prisons ("BOP"), and USP-Tucson officials J. Christensen, K. Moran, Mark Gutierrez, Muhammad Zantout, and T. Schneider as Defendants. Plaintiff seeks injunctive relief.[3]

---

[3] Specifically, Plaintiff seeks an injunction prohibiting BOP from "continuing to

Plaintiff's claims arise from a common core of operative facts, summarized[4] as follows: Plaintiff was born biologically male, but her "gender has never matched her sex characteristic," and she has "always had . . . a strong desire to be female." When Plaintiff was first incarcerated in the BOP in 2007, the BOP did not "have any policies or regulations in place for the housing of transgender persons." Rather, "those with a penis went to a male prison, those with a vagina went to a female prison." Plaintiff was housed in a men's facility and told prison officials in 2007 "that she was a woman and had been improperly housed."[5] Nevertheless, BOP has continued to house Plaintiff in male prisons through the present day. Plaintiff has been repeatedly assaulted, both physically and sexually, by cisgender male inmates as a result.

. . . .

---

house Plaintiff in SHU[,] . . . using sex as a basis for designation or transfer initial determinations, . . . denying Plaintiff a meaningful opportunity to transition to a women's prison, . . . failing to enforce 28 C.F.R. § 115.67 meaningfully[,] . . . refusing Plaintiff housing at a lesser security prison[, and ] . . . housing Plaintiff as a Mental Health Care Level 3 in SHU in excess of 30 days."

[4] Plaintiff makes her claims by narrative, much of which bears little to no relevance to the elements of Plaintiff's claims, and appears, at best, to merely provide background or context. (*See* Doc. 14 at 8-25). The Court thus summarizes only the pertinent aspects of Plaintiff's claims.

[5] The Court observes that in each of Plaintiff's three underlying federal criminal proceedings, Plaintiff self-identified as male and used male pronouns when referring to herself until at least 2014. *See United States v. Pinson*, 5:06-CR-00114 (W.D. Okla.) (Doc. 145, July 15, 2014 handwritten pro se filing referring to Plaintiff using male pronoun "him"); *United States v. Pinson*, 5:07-CR-00023 (W.D. Okla.) (Doc. 120, July 15, 2014 handwritten pro se filing referring to Plaintiff using male pronoun "him"); *United States v. Pinson*, 4:08-CR-00283 (S.D. Tex.) (Doc. 68, May 6, 2011 handwritten pro se filing referring to Plaintiff using male pronouns "his" and "him"). Indeed, the earliest filing in any of these cases in which Plaintiff refers to herself using female pronouns was in 2020. *See* 5:06-CR-00114 (Doc. 166, Jan. 21, 2020 handwritten pro se filing referring to Plaintiff using female pronoun "her"); 5:07-CR-00023 (Doc. 140, Jan. 21, 2020 handwritten pro se filing referring to Plaintiff using female pronoun "her"); 4:08-CR-00283 (Doc. 125, Mar. 26, 2020 handwritten pro se filing referring to Plaintiff using female pronoun "her"). Plaintiff has self-identified as male and referred to herself in this Court using male pronouns as recently as 2015. *See Pinson v. Unknown Party*, 4:13-CV-02059-BGM (D. Ariz.) (Doc. 24, Mar. 9, 2015 handwritten pro se filing referring to Plaintiff using male pronoun "him").

The Court takes judicial notice of these documents but does not assume the truth of the matters asserted in them. Fed. R. Evid. 201. Rather, the Court merely notes these publicly available filings are not, themselves, subject to reasonable dispute, and highlights them only to illustrate the material differences between how Plaintiff presents herself in this action and how she has presented herself in past actions. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

Placement in male prisons has also negatively effected Plaintiff's mental health, and she has attempted suicide on numerous occasions.  Plaintiff further alleges that "a class-action lawsuit she would file" would "end in sweeping policy changes, creation of new programs, a settlement of millions of dollars, and Plaintiff was removed from supermax ADX" and provided mental healthcare treatment.[6]

In 2017, the BOP promulgated the Transgender Offender Manual "to 'ensure the BOP properly identifies, tracks, and provides services to the transgender population.'"  The Manual "established the 'Transgender Executive Council (TEC)' to offer advice and guidance on unique measures related to the treatment and management needs of transgender inmates.'"  Further, the Manual "incorporated the Prison Rape Elimination Act (PREA) regulations on the management of transgender inmates into the BOP's procedures for designating inmate placement."

In 2018, the Manual was revised "to require the TEC to 'use biological sex as the initial determination for designation or transfer.'"  However, the Manual also "directs that a transgender person's 'own views with respect to his/her own safety must be given serious consideration.'"  Plaintiff alleges that despite this requirement, the BOP has never "asked the Plaintiff's 'own views' 'with respect to her own safety' prior to, or after, her designation" to male prisons.

. . . .

---

[6] Plaintiff identifies this case as *Bacote et al., v. Federal Bureau of Prisons*, 12-CV-01570-RPM (D. Colo.), now known as *Cunningham et al., v. Federal Bureau of Prisons*. The Court observes (*see* n.6, *supra*) that Plaintiff self-identified as male in that action, that none of the claims asserted therein related to transgender inmates or their treatment in BOP custody, and that Plaintiff voluntarily withdrew prior to any settlement or other disposition of the case. *See* Doc. 1 (June 18, 2012 Complaint alleging claims of failure to diagnose and treat serious mental illness, but making no claims related to transgender inmates or the treatment of gender dysphoria); Doc. 67 (May 24, 2013 First Amended Complaint alleging same); Doc. 274 (June 15, 2015 Second Amended Complaint alleging same); Doc. 155 (Jan. 2, 2014 handwritten pro se filing referring to Plaintiff using male pronouns "his" and "him"); Doc. 183 (Mar. 11, 2014 handwritten pro se filing referring to Plaintiff using male pronouns "his" and "he"); Doc. 186 (April 1, 2014 handwritten pro se filing referring to Plaintiff using male pronoun "his"); Doc. 205 (May 29, 2014 handwritten pro se filing referring to Plaintiff using male pronouns "him," "his," "he," and "Mr."); Doc. 225 (Oct. 20, 2014 handwritten pro se filing referring to Plaintiff using male pronoun "his"); Doc. 271 (May 19, 2015 handwritten pro se Motion seeking "to be dismissed without prejudice from this case," granted May 22, 2015).

In 2021, the BOP "issued a Female Offender Manual that recognizes LGBTQ women in BOP policy and sets forth the need to manage them a certain way." However, "the BOP made no such changes to its policies for LGBTQ inmates in male prisons of any security level." As such, Plaintiff alleges that "[b]ut for her penis," the BOP "would not have housed her in a men's facility in 2007 . . . would not have used her 'biological sex as the initial determination for designation or transfer' of the Plaintiff [in] 2018 or later . . . [and] plaintiff would never have been in a men's prison" or suffered physical and emotional trauma as a result.

Plaintiff further alleges that Defendants Christensen, Moran, Gutierrez, Zantout, and Schneider have conspired to retaliate against her for seeking to vindicate her rights.

Accordingly, Plaintiff alleges that the BOP has violated her Eighth Amendment rights to medical care and safety (Counts One and Three) and her Fifth Amendment equal protection rights (Count Two), and that Defendants Christensen, Moran, Gutierrez, Zantout, and Schneider have engaged in a civil rights conspiracy in violation of 42 U.S.C. §§ 1985 and 1986 (Count Four).

**III.    Failure to State a Claim**

Plaintiff alleges in Count Four that Defendants Christensen, Moran, Gutierrez, Zantout, and Schneider have conspired to retaliate against her, in violation of 42 U.S.C. §§ 1985 and 1986.

Section 1985 of Title 42 provides that a person may recover damages occasioned by certain conspiratorial actions. 42 U.S.C. § 1985(3). Similarly, § 1986 provides that a person who fails to prevent the conspiratorial actions identified in § 1985 may be liable for damages to the injured party. 28 U.S.C. § 1986. Plaintiff, however, does not seek damages, only injunctive relief. Neither § 1985 nor § 1986 authorize injunctive relief. Indeed, Plaintiff does not seek any relief related to Defendants Christensen, Moran, Gutierrez, Zantout, and Schneider's actions at all at all.[7] Fed. R. Civ. P. 8(a)(3). Accordingly, Count Four will be dismissed.

---

[7] *See* Doc. 14 at 7 (requesting injunctive relief directed at BOP only).

## IV.    Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has sufficiently stated claims in Counts One through Three against the BOP, and the BOP will be required to answer those counts.[8]

## V.    Motions

### A.    Motion for Limited Appointment of Counsel

Plaintiff seeks "an appointment limited to drafting a complaint the Court will accept." There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. Of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate her claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff is in no different position than many pro se prisoner litigants. Further, the Court will order the BOP to respond to Counts One, Two, and Three; the presence of counsel "to draft[] a complaint the Court will accept" is thus moot. Accordingly, the Court will deny Plaintiff's Motion for Limited Appointment of Counsel.

### B.    Motion to "Renew/Reconsider Injunction"

It is not clear what Plaintiff seeks to "renew/reconsider." Citing to "(Doc. 8)," Plaintiff states that she "asks the Court to grant her Motions." Document 8, however, is the Court's October 25, 2022 Order, not one of Plaintiff's prior motions. To the extent

---

[8] Because Plaintiff seeks only injunctive relief related to these claims, the Court construes the claims as brought pursuant to 28 U.S.C. § 1331.

Plaintiff seeks reconsideration of her original Motion for Preliminary Injunction (Doc. 7), Plaintiff's request is substantially untimely, *see* Local Rules of Civil Procedure 7.2(g)(2), and Plaintiff has already sought reconsideration of the denial of that motion.  (*See* Doc. 11).  Further, Plaintiff's amended complaint and new Motion for Preliminary Injunction render her original request moot.  Accordingly, for the same reasons as those stated in the Court's February 7, 2023 Order, Plaintiff's Motion is denied.

### C.    "Motion Concerning PLRA Screening of Complaint"

Citing various caselaw, Plaintiff "asks the Court to consider her [Second Amended Complaint] with these arguments and precedents in mind."  The Court has done so.  Accordingly, Plaintiff's Motion will be denied as moot.

### D.    Emergency Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction "prohibiting Plaintiff's transfer to the Allenwood Secure Admin Unit . . . [and] requiring BOP to treat Plaintiff under its policies and regulations as it treats 'Female' inmates in those policies and regulations."

Plaintiff's Motion will be denied.  "A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally." *Kaimowitz v. Orland, Fla.*, 122 F.3d 41, 43 (11th Cir.) (per curiam), *amended*, 131 F.3d 950 (11th Cir. 1997) (per curiam).  However, "[a] district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in suit."  *Id.*

Here, Plaintiff makes no allegations in her Second Amended Complaint related to her alleged transfer to the Allenwood Secure Admin Unit.  Further, Plaintiff's request that the BOP be ordered to treat Plaintiff as a female inmate is diametrically opposed to the permanent injunctive relief she seeks in her Second Amended Complaint.[9]  As such, Plaintiff's requested injunctive relief is not of the same character and lies wholly outside

---

[9] *Compare* Doc. 18 at 11 (Motion for Preliminary Injunction requesting that the BOP be ordered to "treat Plaintiff under its policies and regulations as it treats 'Female' inmates in those policies and regulations") *with* Doc. 14 at 7 (Second Amended Complaint requesting permanent injunctive relief prohibiting BOP "from using sex as a basis for designation or transfer initial determinations").

1   the issues in her Second Amended Complaint, and her Motion will thus be denied.

2          **E.     Motion to Seal**

3          Plaintiff seeks to seal three exhibits she wishes to provide in support of her Motion

4   for Preliminary Injunction.  Because the Court will deny the Motion for Preliminary

5   Injunction (*see* Part V.D, *supra*), it will deny Plaintiff's request that the exhibits be placed

6   under seal.  Because the exhibits were lodged and will not be filed, they are not part of the

7   public record.

8          **F.     Motion to Expedite**

9          Plaintiff seeks an expedited ruling on her preliminary injunction.  Because the Court

10  has now screened the Second Amended Complaint and ruled on her Motion for Preliminary

11  Injunction, the Motion to Expedite will be denied as moot.

12  **VI.    Warnings**

13         **A.     Release**

14         If Plaintiff is released while this case remains pending, and the filing fee has not

15  been paid in full, Plaintiff must, within 30 days of her release, either (1) notify the Court

16  that she intends to pay the unpaid balance of her filing fee within 120 days of her release

17  or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis.  Failure to comply may

18  result in dismissal of this action.

19         **B.     Address Changes**

20         If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of

21  address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff

22  must not include a motion for other relief with a notice of change of address.  Failure to

23  comply may result in dismissal of this action.

24         **C.     Copies**

25         Plaintiff must serve Defendants, or counsel if an appearance has been entered, a

26  copy of every document that she files.  Fed. R. Civ. P. 5(a).  Each filing must include a

27  certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff

28  must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure

**TERMPSREF**

1    to comply may result in the filing being stricken without further notice to Plaintiff.

2        **D.    Possible Dismissal**

3        If Plaintiff fails to timely comply with every provision of this Order, including these

4    warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*,

5    963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

6    to comply with any order of the Court).

7        **IT IS ORDERED:**

8        (1)    Count Four is **dismissed** without prejudice.

9        (2)    Defendants J. Christensen, K. Moran, Mark Gutierrez, Muhammad Zantout,

10    and T. Schneider are **dismissed** without prejudice.

11        (3)    If Plaintiff attempts to amend to address the shortcomings identified in this

12    Order, the amended complaint must be retyped or rewritten in its entirety (including those

13    claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15

14    of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil

15    Procedure.

16        (4)    Defendant BOP must answer Counts One, Two, and Three, as set forth

17    herein.

18        (5)    The Clerk of Court must send by certified mail a copy of the Second

19    Amended Complaint (Doc. 14) and this Order to (1) the civil process clerk at the office of

20    the United States Attorney for the District of Arizona and (2) the Attorney General of the

21    United States, pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure.

22        (6)    Defendant BOP must answer the Complaint or otherwise respond by

23    appropriate motion within the time provided by the applicable provisions of Rule 12(a) of

24    the Federal Rules of Civil Procedure.

25        (7)    Plaintiff's Motion to Withdraw and Motion to Seal (Doc. 20) is **granted in**

26    **part** as to Plaintiff's request to withdraw her Motion to Amend and **denied** in all other

27    regards.

28        (8)    The Clerk of Court **must not file** the exhibits currently lodged at Doc. 21.

The lodged exhibits must remain under seal.

      (9)     Plaintiff's Motion to Amend (Doc. 19) is **denied as moot**.

      (10)    Plaintiff's Motion for Limited Appointment of Counsel (Doc. 15), Motion to Renew/Reconsider Injunction (Doc. 16), Motion Concerning PLRA Screening (Doc. 17), Motion for Preliminary Injunction (Doc. 18), and Motion to Expedite (Doc. 22) are **denied**.

      Dated this 18th day of May, 2023.

 

 

 

_____

Honorable Rosemary Márquez
United States District Judge