United States District Court
District of Arizona

Jeremy Pinson,
  Plaintiff,
v.                                    No. 22-CV-00298-RM
Michael Carvajal, et al.,
  Defendants

## Motion For Reconsideration Of Denial of Preliminary Injunction

Comes now the pro se plaintiff pursuant to Fed. R. Civ. P. 59(e) and seeks reconsideration of the denial of preliminary injunctive relief in Doc. 23.

At the core of the operative complaint (Doc. 14) the plaintiff seeks injunctive relief to compel the BOP to cease treating her as male on the basis of the fact she was assigned that sex at birth. The Motion (Doc. 18) is consistent with that aim. It appears in the Order (Doc. 23 at 8, fn. 9) that the Court believed plaintiff to mean that "Female" in Doc. 18 and "sex" in Doc. 14 mean the same thing. The plaintiff did not intend that the Court misconstrue her intent with her terminology, but the word "sex" was used to refer to her ~~assigned~~ "assigned sex (i.e., the sex that is recorded on the birth certificate)". The word "Female" was used in Doc. 18 referring to her "gender identity". The

-1-

terminology is drawn from the American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013). The DSM-5 focuses on the "clinically significant distress" felt by some of those who experience "an incongruence between their gender identity and assigned sex." DSM-5 at 451-53. Doc. 14 and 18 both seek the same thing, to compel BOP to treat plaintiff not by her "sex" assigned at birth, but as "Female" consistent with her gender identity.

Furthermore, the Court also noted "Plaintiff makes no allegations in her Second Amended Complaint related to her alleged transfer to the Allenwood Secure Admin Unit" and thus her "requested injunctive relief is not of the same character and lies wholly outside the issues in her Second Amended Complaint" (Doc. 23 at 8-9). Again, it appears the Court has misunderstood what the plaintiff was asserting. The plaintiff seeks that BOP be compelled to treat her as female, which is consistent with her gender identity and is at the core of this lawsuit. Allenwood, like USP Tucson, is a male facility that houses no female inmates. As the Court itself acknowledged, "BOP has continued to house plaintiff in male prisons through the present day. Plaintiff has been repeatedly assaulted, both physically and sexually, by cisgender male inmates as a result." (Doc. 23 at 4).

"Plaintiff seeks an injunction prohibiting BOP from .... denying plaintiff a meaningful opportunity to transition to a women's prison" (Doc. 23, fn. 3). Allenwood is a male prison that house no female inmates, its secure Admin Unit is a quantam increase in restrictive confinement that makes transfer to a women's prison more difficult as it has been the BOP's continuous position in multiple court cases systemwide that the path to a women's facility for transgender inmates begins with a transfer to lesser security first. See, Iglesias v. Fed. Bureau of Prisons, No. 19-cv-415-NJR (S.D.Ill. 2022) (granting preliminary injunction); Shelby v. Pliler, No. 19-cv-02020-VSB (S.D.N.Y. 2022) (ordering transfer to female facility).

Gender Dysphoria in the DSM-5 focuses on the "clinically significant distress" of the "incongruence" between their gender identity and assigned sex. Being housed in a men's prison, assaulted by men, sexually harrassed by men, raped by men, misgendered by staff daily, hypermasculinity, discrimination, denial of medically affirming care due to criteria that requires housing in a women's prison, all substantially aggravate and exacerbate the

3

plaintiff's dysphoria and distress. (See Att. A). The act of transferring her to Allenwood is consistent with plaintiff's claim that BOP refuses to recognize her as female, on the basis of her external genital anatomy, in opposition to everything she seeks via this lawsuit as the Court itself outlined in Doc. 23 at fn. 3.

The Court may reconsider "clear error" or when an Order is "manifestly unjust". The Order (Doc. 23) denies relief on the basis of a misunderstanding of terminology and intent and thus should be reconsidered in light of this effort to correct that misunderstanding

*Jeremy Pinson*

4