JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT
# OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-22-00298-TUC-RM |
| Plaintiff, | |
| vs. | **ORDER** |
| Federal Bureau of Prisons, | |
| Defendant. | |

On February 13, 2024, the Court directed the parties to file supplemental briefing related to (1) Plaintiff's request for female-officer searches, (2) custody classification determinations used for transgender prisoners, and (3) access to female hygiene products and undergarments. (Doc. 115). The parties have filed their supplemental briefs. (Docs. 118, 129.) The Court will deny as moot Plaintiff's request for female-officer searches and grant Plaintiff's request for feminine hygiene products and undergarments. The Court will separately resolve Plaintiff's request for injunctive relief related to custody classification determinations.

**I.     Background**

The parties are familiar with the extensive facts and background in this case. Plaintiff Jeremy Pinson, who is confined in the United States Penitentiary ("USP") Allenwood, in White Deer, Pennsylvania, brought this civil rights action under 28 U.S.C.

§ 1331 against the Federal Bureau of Prisons ("BOP"). (Doc. 14.)[1] In her operative Second Amended Complaint, Plaintiff states that she has gender dysphoria and identifies as female but has been incarcerated in male prisons since entering Defendant's custody. (*Id.* at 8, 13–14, 18.)[2] Plaintiff explains that placement in male prisons has negatively affected her mental health and led to multiple suicide attempts. (*Id.* at 17.) Upon screening, the Court determined that Plaintiff sufficiently stated an Eighth Amendment medical/mental health care claim and a threat to safety/failure to protect claim (Counts One and Three), and a Fifth Amendment equal protection claim (Count Two). (Doc. 23.)

On February 13, 2024, the Court issued an omnibus Order addressing various motions, including Plaintiff's Motion for Preliminary Injunction seeking an order prohibiting Defendant from performing cross-gender strip searches of Plaintiff, allowing cisgender male prisoners and staff to view her on suicide watch, and failing to enforce the Prison Rape Elimination Act's ("PREA") antiretaliation regulation. (Doc. 115, addressing Doc. 27.) The Court found that it did not have authority to grant Plaintiff's request regarding the PREA's antiretaliation regulation and that Plaintiff's request to prevent cisgender male prisoners and staff from viewing her on suicide watch was not a narrowly tailored request as required by the Prison Litigation Reform Act. (Doc. 115 at 17–18.) *See* 18 U.S.C. § 3626(a)(1).

As to the remaining request for female-only visual searches, the Court determined that an accommodation in the form of utilizing female officers for visual strip searches of Plaintiff was reasonable in the circumstances; thus, Defendant's failure to make such an accommodation may rise to deliberate indifference, thereby satisfying the likelihood-of-success element in the preliminary injunction analysis. (*Id.* at 21–22.) *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court also determined that

---

[1] Plaintiff was previously housed at the USP Tucson, Arizona. She was transferred to USP Allenwood in early January 2024. (Doc. 103.)

[2] Plaintiff has moved to amend the Second Amended Complaint. (Doc. 117). That Motion will be resolved by separate order.

there existed a present threat of irreparable injury and that the balance of equities and public interest weighed in Plaintiff's favor. (*Id.* at 23.) *See Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021)

In briefing on Plaintiff's Motion, Defendant explained that it has a process for transgender prisoners to request to be searched by a staff member of the prisoner's identified gender, and Plaintiff stated that she had previously been granted such an exception, but USP Tucson Warden Gutierrez canceled it. (Doc. 115 at 24.) Therefore, although Plaintiff satisfied the *Winter* factors, before ruling on the Motion, the Court ordered further briefing directing Defendant to address the following specific issues: (1) whether Plaintiff was previously granted an exception for female-officer searches; (2) if so, why that exception was canceled; and (3) the effect, if any, of Plaintiff's transfer to USP Allenwood on her status for an exception for female-officer searches. (*Id.* at 24, 39–40.)

The Court also directed Defendant to address whether Defendant's use of male procedures to determine the custody classification levels of female transgender prisoners housed in male institutions is substantially related to the achievement of an important governmental objective, and whether Plaintiff is being provided access to female hygiene products and female undergarments at USP Allenwood. (*Id.* at 39–40.)

**II.     Preliminary Injunction Standard**

The issues highlighted by the Court and addressed in the parties' supplemental briefing relate to Plaintiff's various requests for injunctive relief.

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see Winter*, 555 U.S. at 24 (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional

violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti*, 11 F.4th at 1047 (citation omitted).

A plaintiff seeking a preliminary injunction must show: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest mostly concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted). Regardless, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**III.   Discussion**

    **A.   Request for Female Officer Search Exception**

Defendant submits evidence showing that transgender prisoners may request to be visually searched by a staff member of the prisoner's identified gender by submitting a request to the Warden. (Doc. 118-1 at 4, Pullen Decl. ¶ 9). The Warden may authorize the request after consultation with staff from health and psychology services. (*Id.*) According to Defendant, there is no record that Plaintiff requested a female-only visual search accommodation prior to November 9, 2023, and that the Warden at USP Tucson did not cancel any such accommodation that was previously given. (Doc. 118 at 5.)

The proffered evidence shows that, on November 9, 2023, while housed at USP Tucson, Plaintiff submitted a request for a female-only visual search exception. (Doc. 118-1 at 14.) The USP Tucson Warden denied Plaintiff's request. (*Id.* at 15.)

- 4 -

After her transfer to USP Allenwood in early January 2024, Plaintiff submitted a request to be pat searched and/or visually searched by female staff only. (*Id.* at 20.) The USP Allenwood Associate Warden approved the pat search accommodation and approved the visual search accommodation in part. (*Id.* at 20, 22.) The Associate Warden directed that body scanning technology be utilized when available in lieu of female staff conducting a visual search. (*Id.* at 20.)

In her Supplemental Reply, Plaintiff does not refute that she has been granted a pat search and visual search accommodation as described by Defendant. Accordingly, Plaintiff's request for preliminary injunctive relief in the form of an accommodation for female officer searches (within Doc. 27) will be denied as moot.

**B.    Female Hygiene Products**

Medical records submitted by Defendant show that Plaintiff has been diagnosed with gender dysphoria, which the Ninth Circuit has recognized as a serious medical need that implicates the Eighth Amendment. (Doc. 66 at 6, 8.) *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019). As stated, this case includes an Eighth Amendment claim for inadequate medical/mental healthcare related to Plaintiff's gender dysphoria. (*See* Doc. 23.) Courts have recognized that permitting social transitioning behaviors, like hair removal and wearing makeup and female clothing, can prove effective in treating gender dysphoria. *See, e.g.*, *Kosilek v. Spencer*, 774 F.3d 63, 75 (5th Cir. 2014) (evidence supported that parts of the transgender prisoner's treatment plan—"hormones, hair removal, and the provision of female clothing"—provided some level of improvement); *Keohane v. Jones*, 328 F. Supp. 3d 1288 (N.D. Fla. 2018) (granting transgender prisoner's request for access to female clothing and grooming standards where experts for both parties agreed that it was a necessary accommodation to treat her gender dysphoria).

In its Supplemental Response, Defendant expounds on the efforts it has made to allow Plaintiff to live in accordance with her gender identity despite being housed in a male facility. (Doc. 118 at 12.) Defendant cites to the BOP Transgender Offender Manual, which sets forth the objective of ensuring that transgender prisoners have access to services

that meet their needs and that sufficient resources be allocated to deliver these services to transgender prisoners. (*Id.*)[3] The Transgender Offender Manual specifically states that transgender prisoners will have the opportunity to have undergarments of their identified gender, and it refers to the "Standardized lists of Commissary items for transgender inmates."[4]

Defendant submits evidence showing that, at USP Allenwood, transgender prisoners have the opportunity to have undergarments of their identified gender. (Doc. 118-1 at 10–11, Pullen Decl. ¶ 32.) Also, the general population commissary list includes approximately 21 "transgender items." (*Id.* 33.) Defendant states that prisoners in the Special Housing Unit "are authorized identified items, including items identified as a 'Transgender Item.'" (*Id.* ¶ 34.) Prisoners are also able to order additional transgender items through a "Special Purpose Order" process, which allows a prisoner to order items such as hair care, bras, underwear, socks, watch, and shoes. (*Id.* ¶ 35.) Defendant explains that, when transgender prisoners arrive at USP Allenwood, they are issued two bras and two pairs of underwear. (*Id.* ¶ 38.) According to Defendant, Plaintiff has been issued female undergarments and a standard hygiene kit with gender-neutral items. (*Id.* ¶¶ 37–38.) Defendant also states that, in January 2024, Plaintiff submitted a request for access to facial hair removal/electrolysis because she is allergic to Magic Shave, a razorless cream shave, and that request is under review. (*Id.* ¶ 37.) Defendant asserts that Plaintiff has not requested any specific female hygiene products. (*Id.* ¶ 38.)

In her Supplemental Reply, Plaintiff states that, because she is housed in the Special Housing Unit, she does not have access to the regular commissary, and she proffers a copy of the "Allenwood Commissary List – Special Housing Unit," which shows that the only "transgender item" available is Suave Powder Deodorant. (Doc. 129-1 at 1, Pl. Decl. ¶ 5;

---

[3] *See Federal Bureau of Prisons Program Statement 5200.08, Transgender Offender Manual*, www.bop.gov/policy/progstat/5200-08-cn-1.pdf (last visited Mar. 27, 2024).

[4] *See id.* at 12.

- 6 -

Doc. 129-1 at 26.)  Plaintiff avers that the Warden confirmed to her that Suave deodorant is the only item she may have.  (Doc. 129-1 at 1–2, Pl. Decl. ¶ 6.)  Plaintiff avers that her requests to shave her facial hair and wear a female uniform have been denied.  (*Id.* ¶¶ 7–8.)

Based on the parties' submissions, USP Allenwood has a blanket policy that limits female hygiene items available to transgender prisoners in the Special Housing House to Suave deodorant.  The Ninth Circuit has held that denial of treatment for gender dysphoria based on a blanket prison policy, rather than individual need, may constitute deliberate indifference under the Eighth Amendment standard.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039–40 (9th Cir. 2015); *Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001); *see also Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir.2014) (holding that the "blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that one eye is good enough for prison inmates is the paradigm of deliberate indifference" (internal quotation marks omitted)).  The Ninth Circuit has also held that "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny . . . or intentionally interfere with medical treatment.'"  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quotation omitted).  Accordingly, the first *Winter* element is met.

Plaintiff asserts that, while housed in the Special Housing Unit, she cannot shave, she is denied female products, and she cannot live day to day as a female. (Doc. 62 at 16.) Plaintiff states that being forced to wear facial hair triggers her gender dysphoria every day. (*Id.* at 50.) Plaintiff previously averred that she has repeatedly attempted suicide to "end [her] misery living in a men's prison." (Doc. 18-1 at 4, Pl. Decl. ¶ 12.) Plaintiff's suffering as a result of the ongoing denial of treatment in the form of basic products for social transitioning behavior supports a finding of irreparable harm.

Defendant acknowledges the importance of providing female products to transgender prisoners like Plaintiff, and it demonstrates that it has female transgender items available at its commissary.  Significantly, Defendant represents to the Court that Plaintiff

was given two bras and two pairs of underwear, that she "has access to female hygiene products," and that a "Special Purpose Order" process is available for Plaintiff to order more items. (*Id.* at 12.) Defendant would not be harmed by an Order requiring it to provide to Plaintiff what it claims is already available to her. And it is in the public interest to provide adequate treatment and accommodations for Plaintiff's gender dysphoria.

For the above reasons, the Court will grant Plaintiff's request for female undergarments and hygiene products.

**IT IS ORDERED:**

(1) Plaintiff's request for female pat searches and visual searches (within Doc. 27) is **denied as moot**.

(2) Plaintiff's request for female undergarments and hygiene items (within Doc. 62) is **granted** as follows:

(a) Defendant must immediately ensure that Plaintiff has been given or is given two bras and two pairs of female underwear:

(b) Defendant must immediately either (1) make available to Plaintiff the Standardized list of Commissary items from which to order transgender/female hygiene products or (2) allow Plaintiff to use the Special Purpose Order process to order transgender/female hygiene products.

(c) Defendant must immediately provide a way for Plaintiff to remove her facial hair, either through the requested hair removal/electrolysis, shaving products, or other means.

(d) Within **ten (10) days** from the date of this Order, Defendant must file a Notice indicating what items and hair removal means have been provided to Plaintiff and what items she has ordered.

(4) This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct the harm. See 18 U.S.C. § 3626(a)(2).

. . . .

(5)   Plaintiff is not required to post bond.

Dated this 29th day of March, 2024.

_____
Honorable Rosemary Márquez
United States District Judge