FILED ___ LODGED
RECEIVED ___ COPY
JUL - 1 2024
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

United States District Court
District of Arizona

Jeremy Pinson,
    Plaintiff,
v.
Michael Carvajal, et al.,
    Defendants

No. 22-CV-00298-RM

## Plaintiff's Motion For A Preliminary Injunction and Appointment Of Special Master

Comes now the pro se plaintiff as a result of ongoing sexual harrassment and hereby seeks a preliminary injunction pursuant to Rule 65(a), Federal Rules of Civil Procedure. Moreover, because of the systemic nature of the sexual misconduct Plaintiff seeks appointment of a Special Master pursuant to Rule 53, Federal Rules of Civil Procedure to investigate and protect the Constitutional rights of victims of sexual abuse.

### I. Procedural Background

On Feb. 13, 2024 this Court issued an Omnibus Order resolving several motions seeking injunctive relief (Doc. 27, 31, 35, 62, 80) and motions seeking to supplement the record. (Doc. 58, 97, 100). The Court denied relief in part, and took under advisement 2 separate categories of requested relief. (Doc. 115 at 38-40)(ordering supplemental briefing). Following supplemental briefing the Court granted one of the categories of relief it had taken under advisement on

Page 1 of 17

March 29, 2024 (Doc. 146)(Order granting preliminary injunction). The second category of relief after supplemental briefing remains under advisement (see, Doc. 115 at 38-40; Doc. 118 etc.). Plaintiff also sought to modify the first injunction. (Doc. 157).

## II. Relevant Facts

Plaintiff has continued to suffer sexual abuse in custody from both inmates and staff. (Decl. of Jeremy Pinson at 15, 18-20). The BOP is aware of plaintiff's allegations as she has submitted 3 SF-95 Claims ~~[redacted]~~ supported by extensive documentation and testimony under penalty of perjury. Because staff abusers have threatened plaintiff with serious bodily harm, and BOP refuses to protect her from such individuals, she hereby seeks a preliminary injunction. (id. at 21-23).

## III. Judicial Notice

The Northern District of California has entered a preliminary injunction and appointed a Special Master against BOP on identical factual and legal grounds as those presented by this Motion. See: California Coalition For Women Prisoners, et al. v. United States, Case No. 23-CV-04155-YGR (N.D.Cal. 2024). Because that relief has been granted in a class-action suit against the same defendant to this case it has a potential for being both relevant and duplicative for a party to this action thus Plaintiff asks the Court to take judicial notice of two

Page 2 of 17

specific orders in that case: (1) the preliminary injunction and (2) the appointment of a Special Master, pursuant to Fed. R. Evid. 201 both for (a) their persuasive value and (2) as support for plaintiff's request that the Special Master she seeks being appointed on a systemwide basis due to BOP's closure of the facility in California Coalition to deprive the Court's jurisdiction, which plaintiff seeks to pre-emptively prevent in this case.

### IV. Arguments and Authorities

#### A. Legal Standard For Injunctions

The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) she is likely to succeed on the merits of her claim, (2) she is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in her favor, and (4) the preliminary injunction is in the public interest. See: Winter v. Nat. Res. Def. Council Inc., 555 U.S. 7, 20 (2008); accord, Chamber of Comm. of the U.S. v. Bonta, 62 F.4th 473, 481 (9th Cir. 2023). As a general matter, the first factor "is a threshold inquiry and is the most important factor," Env't. Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017). When, like here, the nonmovant is the government the last two

## C. Plaintiff Is Likely To Succeed On the Merits

Even without Doc. 146 declaring this case likely to succeed on the merits, the evidence here supports that a risk of harm exists of a systemic nature within BOP such that this Court should issue the same preliminary injunction issued by Judge Gonzales-Rogers in California Coalition For Women Prisoners and a Special Master in light of BOP's move to close FCI Dublin to escape the monitoring and jurisdiction of Judge Gonzales-Rogers given BOP's history of moving plaintiff to evade this Court's jurisdiction. (See Doc. 98 to 110 in Pinson v. Othon, Case No. 20-CV-00169-RM)(D.Ariz. 2020)).

Since this case was filed she has suffered the following incidents:

1. June 27, 2022 plaintiff files PREA complaint pursuant to 28 C.F.R. 115.51 against sexual predator Tyrone Brown. (Pinson Decl. at 3);
2. June 28, 2022 - Brown is released into plaintiff's unit, plaintiff sends email complaint triggering Brown's placement in SHU for investigation. (id. at 4; Att. A);
3. Plaintiff reports being threatened and berated for her PREA complaint by Lt. Christensen. (id. at 5; Att. B);
4. Brown is released from SHU 9-13-22 triggering PREA complaints from 6 inmates. (Pinson Decl. at 6; Zaragosa-Solis Decl. at 1-4).
5. Brown attacks Pinson, Zaragosa-Solis, Gulisano on 9-14-22, less than 24 hours later. (Pinson Decl. at 7; Zaragosa-Solis Decl. 7-9).

Page 6 of 17

6. Deputy Regional Director Thomas Ray Hinckle and Warden Mark Gutierrez use SIS Report written by Christensen to write Request For Transfer (a.k.a. "409") seeking her transfer to "more restrictive environment" after threatening her to drop lawsuit in Case No. 19-cv-00422-RM. (Pinson Decl. at 8-9; Att. C).

7. Plaintiff reports ongoing misconduct at USP Tucson to BOP Central Office in emails on 4-7-2023 (id., Att. D) and on 4-28-23 (id., Att. E). Staff required to report her allegations. (id., Att. F).

8. Inmate named in Request For Transfer denies, under penalty of perjury, statements in Christensen report attributed to him. (id. at Att. G).

9. Jan. 3, 2023 BOP Transgender Executive Council begins considering "409" Request to transfer plaintiff to a "more secure environment" (id., Att. H) continue meeting from Jan. 17, 2023 to Nov. 2023 (id., Att. I, J) selecting new "Secure Administrative Unit" (id., Att. J, K).

10. During bench trial in Case No. 19-cv-00422-RM, officers trash plaintiff's cell threatening her and presiding Judge Rosemary Marquez. (Ex. 2, Decl. of Elmer Moreno).

11. Plaintiff designated to SAU immediately after trial. (Ex. 1 at Att. J).

12. Plaintiff sexually harrassed en route to FTC Oklahoma City and violently raped by gang member in Special Housing Unit for 5 days. (id. at 15). Arrives to USP Allenwood covered in bruises which staff make fun of. (id. at 16).

13. Staff continue sexual harrassment and abuse in SAU. (see

Page 7 of 17

Ex. 4, Decl. of Juan Vargas; Ex. 5, Decl. of Bruce Altenburger). Staff member makes threats of death and serious bodily injury. (id.; Ex. 1 at 17).

14. Inmate sexually harrasses plaintiff which is reported to Central Office on 3-19-24 and remains housed in SHU with abuser. (Ex. 1, Att. L);

15. Following report of staff abuser to OIG/Regional Counsel on 4-29-24 staff begin to harrass plaintiff by asking questions like "can you tell them I told you to suck my dick too like you did Reese?" on 6-22-24 and then refuses to allow her to use telephone. (Pinson Decl at 19). Officers serve plaintiff empty meal trays to deny her food, plaintiff loses 50 pounds over 3 weeks. (id. at 20). Other officers continue making threats of bodily harm and death threats. (id. at 20). Also: See Ex. 4, Vargas Decl.; Ex. 5, Altenburger Decl.

The evidence supports far more than the Eighth Amendment standard for a preliminary injunction which is that "a prisoner need only show a substantial risk of serious harm — not actual harm" Garrett, 96 F.4th at 905; Farmer, 511 U.S. at 828; Helling, 509 U.S. at 33; Parsons, 754 F.3d at 676-77. The first Winter factor, likelihood of success, "is a threshold inquiry and is the most important factor" in any motion for a preliminary injunction. Env't. Prot. Info. Ctr., 968 F.3d at 989. That holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation. If a plaintiff bringing such a claim shows she is likely to prevail on the merits,

Page 8 of 17

that showing will almost always demonstrate she is suffering irreparable harm as well. See: Humble, 753 F.3d at 911; Melendres, 695 F.3d at 1002 ("'The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)(plurality opinion))); also, Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017)(holding that a finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional"). Accordingly, "when an alleged deprivation of a constitutional right is involved ... most courts hold that no further showing of irreparable injury is necessary". 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d. ed. 1998).

Here, multiple witnesses testify "I have previously been sexually harrassed by male officers employed by the BOP" and they "were allowed to retaliate against me by threatening me with serious bodily harm" (Ex. 4 at 6); "I was sexually assaulted by a male staff member who ... digitally inserted his finger into my rectum" and then "calling me a 'snitch' in front of other inmates and threatening me with further serious bodily harm" (Ex. 5 at 5-6). Those witnesses testimony alone demonstrates a likelihood of success on the merits of a constitutional claim. See: Pinson v. Unknown Party, 698 F. Appx. 445, 446 (9th Cir. 2017)(reversing grant of summary judgment where officer labelling inmate a "snitch" violated 8th Amendment); also: Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001)(it is clearly established that labelling prisoner a snitch constitutes deliberate indifference). Those victims also confirm with their

testimony regarding plaintiff: "I have witnesses other officers such as Lynch, Browning, Bohner... call Pinson (1) faggot (2) queer (3) SIS rat and (4) Internal Affairs snitch" (Ex. 5 at 12); "I also heard Officer Reese tell Pinson 'I will make sure you get more time on your sentence too' if Pinson reported him for asking her in SAU Cell 119 to perform fellatio on him" (Ex. 4 at 12).

Because "public interest concerns are implicated when a constitutional right has been violated, ... all citizens have a stake in upholding the Constitution," Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005), meaning "it is always in the public interest to prevent the violation of a party's constitutional rights," Elasser, 32 F.4th at 731 (quoting Melendres, 695 F.3d at 1002); see also: Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics, 29 F.4th 468, 482 (9th Cir. 2022) ("This Court 'has consistently recognized the significant public interest in upholding [constitutional] principles'") (quoting Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014)). The government also "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983); Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding the government "cannot suffer harm from an injunction that merely ends an 'unlawful practice'" implicating "constitutional concerns"). Accordingly, the Ninth Circuit has held that plaintiffs who are able to "establish a likelihood that [a] policy violates the U.S. Constitution... have also established that both the public interest and the balance of the equities favor a preliminary injunction." Ariz. Dream Act Cal. v.

Brewer, 757 F.3d 1053, 1069 (9th Cir. 2014); Hernandez, 872 F.3d at 996. Ninth Circuit "caselaw clearly favors granting preliminary injunctions to a plaintiff... who is likely to succeed on the merits of her [Constitutional] claim." Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009).

California Coalition for Women Prisoners reveals that the BOP has had every opportunity to correct the rampant sexual abuse and retaliation against victims, but failed time after time again. It should be granted no further opportunitize to victimize. This case alone involves 4 victims of sexual abuse just in this motion, they arent the only witnesses plaintiff could have used, but they are each consistent in testifying to one fact: staff employed by the defendant engaged in deliberate indifference through (1) sexual misconduct, (2) retaliation against victims who reported them. These acts violate the Eighth Amendment. These acts require defendant, as their employer, to hold them accountable. But defendant, for its own reasons, will not do so no matter who the victim is unless compelled to do so as California Coalition and other lawsuits in other locations describe so clearly as plaintiff does in this motion. For these reasons plaintiff seeks that the Court "not shrink from [its] obligation to enforce constitutional rights regardless of the constitutional right at issue." Bonta v. Baird, 81 F.4th 1036, 1040-43 (9th Cir. 2023)(quoting Porretti, 11 F.4th at 1047; Brown, 563 U.S. at 511). Each of the victims, including but not limited to plaintiff, deserve no less. (id.).

### D- The Other Factors Combine To Warrant Relief

Finally, because the likelihood of success on the merits issue is of particularly important consideration in the preliminary injunction analysis of a constitutional claim, plaintiff has also shown, according to Ninth Circuit case law, that the balance of equities and public interest sharply tilt in her favor along with the irreparable harm. See, Melendres, 695 F.3d at 1002; Elasser, 32 F.4th at 731; Zepeda, 753 F.3d at 727; Ariz. Dream Act. Coal., 757 F.3d at 1069; Am. Beverage Ass'n, 916 F.3d at 757-58 (each recognizing that a showing of likelihood of success on the merits of a constitutional claim "compels a finding" that the other factors favor issuance of a preliminary injunction). A district court that fails to employ this "legal standard for the issuance of a preliminary injunction" has "therefore abused its discretion." Bonta, citing Cal. Chamber of Com., 29 F.4th at 475. "District courts carry heavy case dockets" of prisoner litigation "thus it is understandable why they may seek to resolve cases on what may appear a simpler basis. But a court confronted with a constitutional claim may not, in short, skip over" the importance of the constitutional nature of a claim when "evaluating a movant's likelihood of success on that claim when it adjudicates a preliminary injunction motion." Bonta (citing Elasser, 32 F.4th at 731; Ariz. Dream Act Coal., 757 F.3d at 1069; Melendres, 695 F.3d at 1002; Zepeda, 753 F.3d at 727).

### E- Plaintiff Seeks an Evidentiary Hearing and Appointment of a Special Master

The Court has taken under advisement Plaintiff's multiple

requests for appointment of counsel in this case. (See Doc. 115, Page 1, fn. 1)(citing Doc. 111) and plaintiff recently renewed that request in a motion concerning access to witnesses in discovery filed (prior to circumventing BOP to obtain evidence from 3 of those witnesses by bypassing BOP's permission through an unincarcerated source to collect statements for plaintiff and forwarding to her) in Doc. 181 (which BOP has sought more time to respond to, See Doc. 183) but plaintiff also seeks additional relief relating to this Motion:

1) <u>An evidentiary hearing.</u> Plaintiff seeks an evidentiary hearing to present additional victims of sexual misconduct who faced post-reporting retaliation. At this time victims Vargas, Zaragosa-Solis, Altenburger have testified herein but more witnesses exist who will testify to being victimized and retaliated against for reporting. This testimony is essential to aid the Court in its fact-finding process before deciding this Motion. If it were possible to do so via declarations plaintiff would do so as she did with Vargas, Zaragosa-Solis, and Altenburger. But those 3 declarations alone took 6 months to acquire. An evidentiary hearing would bypass this burdensome process altogether and help the Court to understand that sexual abuse in male facilities is equal to or worse than what Judge Gonzales Rogers faced in California Coalition. While plaintiff hoped the Court would appoint counsel and also may have recruited a Washington, D.C. based law firm,

firm and attorney (see Pinson Decl. at 22) so an attorney can collect such, plaintiff also feels such a sense of urgency to exist necessitating a Motion being filed now to protect herself and similarly situated victims. (Id. at 23). Therefore, while the plaintiff waits to learn if the Washington Lawyers Committee or the Court has decided to provide an attorney who could collect such declarations (id.), she seeks an evidentiary hearing now seeking to demonstrate for the Court how dire is the need for injunctive relief by presenting live testimony from sexual misconduct victims at a hearing.

2.) <u>A Special Master.</u> When this Court was days from an evidentiary hearing in Pinson v. Othon, Case No. 20-CV-00169-RM (at Doc. 98 to 110)(D. Ariz. Nov. 30, 2020) plaintiff received an emergency transfer. When the Court in Iglesias v. Fed. Bureau of Prisons, No. 19-CV-415-NJR (S.D.Ill. 2022) was about to do so, Christina Iglesias received a sudden transfer to a women's prison in another state. In California Coalition, Judge Gonzales-Rogers issued a preliminary injunction and appointed a Special Master, so BOP closed FCI Dublin and transferred the plaintiffs hundreds to thousands of miles from the Court. The defendant to this action likes to transfer inmates to deprive federal judges of jurisdiction over inmates who successfully demonstrate the need for injunctive relief. For

this reason plaintiff asks that a Special Master with authority to investigate systemwide hereby be appointed to aid the Court in executing the relief sought by this Motion as well as the prior relief granted in the Doc. 146 injunction. Rule 53 of the Federal Rules of Civil Procedure permit such to occur.

Special Masters have been used in a variety of prison cases in the Ninth Circuit beginning with Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982) but continuing with the oft-cited California Coalition case most recently. Moreover, the United States agreed so itself when suing the State of Alabama in United States v. Alabama, No. 20-cv-01971-RDP (N.D. Ala. 2023). Alabama countered with a motion seeking to inspect multiple BOP facilities (given the hypocrisy of the federal government suing a state for a problem existing in its own prison system) which the Court granted. Obviously, plaintiff can not inspect BOP facilities even though Federal Rule of Civil Procedure 35 lawfully authorizes a party to do so. In 2005 the OIG released a report following an audit of BOP facilities titled "Deterring Staff Sexual Abuse of Inmates (Apr. 2005)". In 2022 U.S. Senators released a similar report titled "Letters from Senators Durbin, Grassley, Feinstein and Padilla to Attorney General Garland and Deputy Attorney General Monaco (Dec. 12, 2022)" (available at www.grassley.senate.gov/imo/media/doc/durbin_grassley_to_justice_deptbop sexualmisconduct.pdf), in 2023 the Working Group established because of the California Coalition Case <u>all</u> found sexual abuse and retaliation against victims but not because of audits of

page 15 of 17

high security male facilities. Plaintiff seeks a Special Master be appointed to interview 120 victims of sexual abuse because it would be impractical for plaintiff to call 120 victims at her evidentiary hearing and a logistical nightmare for the Court, U.S. Marshals and BOP to secure their presence at an evidentiary hearing whereas a Special Master can confidentially interview the 120 inmates the plaintiff will identify and submit their findings to the Court from an independent source with no bias towards either party to this case. See, e.g. Armstrong v. Newsome, Case No. 94-CV-02307-CW (N.D.Cal., Mar. 11, 2021)(entering systemwide injunction based upon report by Special Master finding systemic retaliation against inmate victims by prison guards).

Alternatively, plaintiff seeks to call 8 victims at an evidentiary hearing to establish the need, on the basis of victim testimony like Vargas, Altenburger, Zaragosa-Solis and Plaintiff, for a Special Master. The public record, of which the Court may take judicial notice, is replete with examples of ongoing sexual abuse in the BOP. See, e.g.:

1. Beaubrun et al. v. United States, No. 19-CV-615-TJC (M.D. Fla. 2020)(multiple victims);
2. United States v. Herrera, No. 17-CR-415 (S.D.N.Y. 2023)(Order granting compassionate release due to victimization);
3. Delarosa v. United States, No. 22-CV-116 (E.D.K.Y)(same);
4. Cardenas v. United States, No. 23-CV-00745 (N.D.Tex.);
5. Green v. United States, No. 21-5398 (6th Cir.);
6. Shorter v. United States, No. 19-CV-16627 (D.N.J.).

Page 16 of 17

## Conclusion

Wherefore, plaintiff seeks a preliminary injunction requiring Defendant, its agents, officials, employees, to (1) adequately hire, train and supervise its employees to prevent their ongoing sexual misconduct and abuse of power; (2) implement a confidential and reliably available method for individuals to report abuse to fully independent outside authorities who are not employed by the BOP; (3) properly investigate claims of abuse; (4) immediately cease the practice of placing individuals who report sexual abuse into solitary confinement and SHU; (5) address rampant retaliation against survivors, including but not limited to placement in solitary confinement, punitive cell and strip searches, and punitive transfers, which harm survivors and deter others from reporting. (Note: Language of relief drawn from Page 83 of California Coalition Complaint)(Ex. 1 at Att. M; and 23).

Plaintiff also seeks an evidentiary hearing and Special Master as set forth herein to assist the Court in investigating the necessity, and assisting with the implementation, of a preliminary injunction.

Jeremy Pinson

Page 17 of 17