Ex. 1

Jeremy Pinson # 16267-064
_Name and Prisoner/Booking Number_

USP Allenwood
_Place of Confinement_

P.O. Box 3000
_Mailing Address_

White Deer, PA, 17887
_City, State, Zip Code_

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Jeremy Pinson ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Federal Bureau of Prisons ,
(Full Name of Defendant)

(2) Mark Gutierrez ,

(3) Muhammad Zantout ,

(4) Linda Geter ,

Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 22-CV-00298-RM
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint
☑ Third Amended Complaint

## A.  JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☑ 28 U.S.C. § 1331; ~~████████████~~
    ☑ Other: 42 U.S.C. 1985-86; 28 U.S.C. 2201-02 .

2.  Institution/city where violation occurred: Bureau of Prisons - Systemwide .

Revised 12/1/23                                   1

**550/555**

(From Page 1):

(5) Ashley Noble
(6) Alison Leukefeld
(7) Karl Leukefeld
(8) Timethea Pullen
(9) Brandi Reynolds
(10) Jeffrey Burkett
(11) Donald Lewis
(12) Shannon Robbins
(13) J. Felix

**B.  DEFENDANTS**

1.  Name of first Defendant: _Federal Bureau of Prisons_.  The first Defendant is employed
as: _Federal Agency_ at _Systemwide USA_.
    (Position and Title)                                              (Institution)

2.  Name of second Defendant: _Mark Gutierrez_.  The second Defendant is employed as:
as: _Complex Warden_ at _USP Tucson_.
    (Position and Title)                                              (Institution)

3.  Name of third Defendant: _Muhammad Zantout_.  The third Defendant is employed
as: _Associate Warden_ at _USP Tucson_.
    (Position and Title)                                              (Institution)

4.  Name of fourth Defendant: _Linda Geter_.  The fourth Defendant is employed
as: _Senior Deputy Assistant Director_ at _DSCC - Grand Prairie, Texas_.
    (Position and Title)                                              (Institution)
    (Continued on Page    )

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

**C.  PREVIOUS LAWSUITS**

1.  Have you filed any other lawsuits while you were a prisoner?  ☒ Yes   ☐ No

2.  If yes, how many lawsuits have you filed? _Hundreds_ Describe the previous lawsuits:

    a.  First prior lawsuit:
        1.  Parties: _Pinson_ v. _United States_
        2.  Court and case number: _No. 19-CV-401-RM (D. Ariz.)_.
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

    b.  Second prior lawsuit:
        1.  Parties: _Pinson_ v. _United States_
        2.  Court and case number: _No. 19-CV-00422-RM (D. Ariz.)_
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

    c.  Third prior lawsuit:
        1.  Parties: _Pinson_ v. _Estrada_
        2.  Court and case number: _No. 18-CV-00535-RM_
        3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

_I dont possess a complete list_

5. Name of fifth Defendant: <u>Ashley Noble</u>. The fifth defendant is employed as: <u>National Policy and Program Coordinator</u> at <u>BOP's Washington, D.C. Headquarters</u> (hereinafter "Central Office").

6. Name of sixth Defendant: <u>Alison Leukefeld</u>. The sixth defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

7. Name of seventh Defendant: <u>Karl Leukefeld</u>. The seventh defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

8. Name of eighth Defendant: <u>Timethea Pullen</u>. The eighth defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

9. Name of ninth Defendant: <u>Brandi Reynolds</u>. The ninth defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

10. Name of tenth Defendant: <u>Jeffrey Burkett</u>. The tenth defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

11. Name of eleventh Defendant: <u>Donald Lewis</u>. The eleventh defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

12. Name of twelfth Defendant: <u>Shannon Robbins</u>. The twelfth defendant is employed as: <u>TEC Member</u> at <u>Central Office</u>.

13. Name of thirteenth Defendant: <u>J. Felix</u>. The thirteenth defendant is employed as: <u>Case Manager</u> at <u>USP Tucson</u>.

## D.  CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated: *Violation of the 8th Amendment – Failure to Protect*

2.  **Count I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
☐ Basic necessities      ☐ Mail      ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation
☐ Excessive force by an officer      ☒ Threat to safety      ☐ Other: _____

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

A. Background

1. The Federal Bureau of Prisons ("BOP") is a federal agency charged with a duty of care for its entire population under 18 U.S.C. 4042(a).

2. The BOP has about 1200 transgender inmates, and has been sued by its transgender inmates for years alleging systemwide failure to protect and discrimination. (see attached) The BOP Transgender Executive Council ("TEC") members were personally served this lawsuit and were personally aware of the risks of harm facing its transgender population. (id.).

3. In response to the lawsuits, BOP Attorneys and BOP employees filed false and misleading declarations and arguments, misrepresented facts and evidence, and faced sanctions multiple times for their outrageous litigation tactics seeking to deny transgender inmates relief.
(Continued on Page 8)

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
Repeated assaults with serious injuries, severe psychological harm, violation of my rights

5.  **Administrative Remedies:**
a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
b.  Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
c.  Did you appeal your request for relief on Count I to the highest level?  ☒ Yes  ☐ No
d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

**COUNT II**

1. State the constitutional or other federal civil right that was violated: _Violation of the 5th Amendment – Equal Protection Clause_

2. **Count II.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
   ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care
   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer     ☐ Threat to safety     ☒ Other: _Discrimination_

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count II.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1. All facts stated in Count I are reincorporated for this count as well.

2. The defendant BOP promulgated Program Statement 5100.08, entitled "Inmate Designation and Sentence Classification" on Sept. 12, 2006.

3. Program Statement 5100.08 divides BOP's inmates into two populations on the basis of sex = male and female.

4. The words "transgender" and "gender identity" do not appear anywhere in Program Statement 5100.08 as it considers neither.

5. Plaintiff entered BOP custody on 5-7-2007.

6. Pursuant to Program Statement 5100.08, at the time of her 5-7-2007 commitment, the presence of male external physical genitalia led BOP to use the "male" version of its custody classification procedures. The BOP did not consider plaintiff's gender identity at that time. <span>(Continued on Page 11E)</span>

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
Plaintiff has been assaulted, raped, sexually harassed and verbally abused in male facilities. Her treatment has exacerbated her gender dysphoria, PTSD, anxiety, depression, panic attacks, and caused her to attempt suicide and autocastration.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes    ☐ No
   b. Did you submit a request for administrative relief on Count II?     ☒ Yes    ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?     ☒ Yes    ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## COUNT III

1. State the constitutional or other federal civil right that was violated: _Violation of 8th Amendment_

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☒ Medical care
   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _Same as Count II._

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _Same as Count II_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes     ☐ No
   b. Did you submit a request for administrative relief on Count III?     ☒ Yes     ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?     ☒ Yes     ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

**D.  CAUSE OF ACTION**

**COUNT I V**

1.  State the constitutional or other federal civil right that was violated: Violation of 42 U.S.C. 1985 and 1986.

2.  **Count I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☒ Other: Conspiracy
   - ☐ Medical care
   - ☐ Retaliation

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

1. All facts of Counts I-III are reincorporated herein.

2. As stated in Count I, defendant Gutierrez's actions are described in paragraphs 32 to 41 of Count I.

3. Defendant Gutierrez, acted along with Associate Warden Zavitout and Case Manager J. Felix to author and submit to defendants Geter, Noble, Alison Leukefeld, Karl Leukefeld, Pullen, Reynolds, Burkett, Lewis and Robbins the transfer request that resulted in plaintiff's placement in the Allenwood S.A.U.

4. Defendants Gutierrez and Felix and Zavitout knowingly, intentionally and willfully wrote in the transfer request that plaintiff was "using her status as a transgender inmate" in false and malicious contexts to secure her transfer to the S.A.U. (Cont'd on Page 9)

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   Same as Counts 1-3

5.  **Administrative Remedies:**
   a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b.  Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c.  Did you appeal your request for relief on Count I to the highest level?  ☒ Yes  ☐ No
   d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.  _____

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

1. Wherefore Ms. Pinson requests entry of judgment in her favor and against defendant BOP as follows:

A. For Declaratory and injunctive relief, including:
  1. Enjoining defendants to have Ms. Pinson evaluated by medical personnel qualified to treat her condition;
  (continued on Page 20)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___2-6-2024___
            DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

7

Count I

Continuation From Page 3:

4. The Iglesias Court ~~XXXXXXXX~~ would ultimately enter an preliminary injunction against defendant BOP. The case later settled.

5. That same year another transgender federal prisoner would sue = July Justine Shelby. (Case No. 19-CV-2020-VSB (S.D.N.Y. 2022) Finding BOP's TEC relied "on bias and fear, not evidence" the Court ruled in Shelby's favor.

## B. Plaintiff

6. Plaintiff Jeremy Pinson (a.k.a. "Grace") is a 37-year old woman who was assigned male at birth. She is currently incarcerated in the custody of BOP at U.S. Penitentiary-Tucson in Tucson, AZ, a Men's prison.

7. Plaintiff from a very young age has felt she was a girl even though her body did not match what she understood herself to be. She expressed herself at an early age in Pikeville and later Lexington, KY in a feminine manner.

8. Plaintiff's environment from a young age was cruel. A neighbor (a man) sexually molested her for years. Her peers at school bullied her, beating her up, stealing her lunch, spitting on her, calling her "queer". At age 6 she was beaten up by 2 neighborhood boys with a baseball bat. As a result, plaintiff became extremely withdrawn and learned to hide her gender identity from others.

8

1. Plaintiff did not fare much better inside a deeply religious and conservative family where FOX News Channel was on every night in family members' homes.

D. At age 16 plaintiff's mother revealed that she "knew" the plaintiff "was gay." When plaintiff responded quietly that she was "a woman" her mother replied "nonsense you have a penis" and reiterated without concession "Jeremy, you're Gay." Trusting her mother, but deeply conflicted and ignorant, the plaintiff continued to feel as a woman inside but outwardly responded to inquiries as "homosexual" largely not understanding the difference between sexual orientation and gender identity until her early-20's.

1. At age 17, plaintiff entered custody of State authorities. She was sentenced to 3-years in State prison in Oklahoma where she'd be housed in men's prisons, raped, beaten and stabbed. The OK DOC did not treat what was then labelled as Gender Identity Disorder. ("GID"). Desperate to escape a violent state prison, plaintiff wrote threatening letters to government officials and entered federal custody around 2005. She would never leave it.

2. At age 21, plaintiff was sentenced to 240-months in prison for her threatening letters. (W.D. Okla. No's. 06-CR-114-R and 07-CR-023-R). The Sentencing Court recommended she be sent to the Federal Medical Center in Butner, NC for psychiatric treatment. BOP declined and assigned her to U.S. Penitentiary Beaumont in Texas, an extremely violent men's prison.

3. In 2006, BOP promulgated its Inmate Designation and Custody

9

Classification policy as Program Statement 5100.08. That program split inmates into 2 categories: Male or female. ~~████████████████~~ The policy did not then, and does not now, recognize the existence of transgender inmates.

14. Upon commitment to the BOP, P.S. 5100.08 was used and, solely upon the basis of her external genitalia, assigned her as male using male procedures (~~███████~~) and assigned her to a high security Men's prison.

15. At her first facility — USP Beaumont — plaintiff was sexually abused, and responded to her own traumas very badly for several years.

16. Plaintiff was knocked unconscious at her next prison, USP Florence, a Men's prison.

17. Plaintiff was beaten severely at her next prison, USP Victorville — a men's prison — by white supremacist gang members at the direction of the California Aryan Brotherhood.

18. Facing reprosecution for her letters in 2008, plaintiff debriefed with federal authorities prompting AUSA Michael Schultz to write a letter to the USP Victorville Warden, DSCC Chief and BOP Director that her life was in grave danger of serious bodily injury or death and sought her placement in a lesser-security prison for her safety.

19. Judge Lee Rosenthal doubling down on Schultz' request ordered BOP to send the Warden to plaintiff's

Sentencing (No. 08-CR-283, S.D.Tex.) and joined in Schultz's recommendations.

20. BOP ignored or declined to follow either of AUSA Schultz or Judge Rosenthal's recommendations for lesser security and instead designated her to a high security men's prison in Florida. At that point plaintiff became convinced BOP intended to kill her or get her killed and was deeply suspicious of all staff.

21. In 2013 as a result of a class-action lawsuit (Case No. 12-CV-01570-RPM, D.Colo) BOP had plaintiff examined by 3 expert witnesses — Psychologist Dr. Ashley Noble, a former BOP Psychiatrist Dr. Sally Johnson, and an independent non-BOP-affiliated psychiatrist Dr. Hannah Ong diagnosed plaintiff with Gender Dysphoria. ("GD" hereinafter).

22. As a result of the GD diagnosis, plaintiff was transferred to the Medical Center For Federal Prisoners ("MCFP") in Springfield, MO, for a further psychiatric evaluation. Her GD diagnosis was confirmed by a psychologist, a medical doctor, and a psychiatrist, once again. Still, BOP would not send her to a women's prison. Instead, it returned her to USP Florence, a high security men's prison.

23. At USP Florence plaintiff would attempt autocastration and suicide requiring emergency hospitalizations and surgeries.

24. In 2016, BOP transferred her to USP Allenwood, another men's prison where following being pressured for sex by a major sexual predator BOP placed plaintiff in SHU

where she attempted suicide and autocastration, once again requiring emergency surgery. At one point she set her own cell on fire hoping to die from smoke inhalation, and was re-hospitalized.

25. BOP transferred her to USP Terre Haute, another high security's men's prison where she was assaulted with a lock on a belt after a white supremacist, Johnny Pingleton, attacked and seriously injured her. Following another suicide attempt, BOP returned her to MCFP.

26. At MCFP plaintiff would experience continuous isolation and taunting by corrections officers who called her a "fag" and once again attempted suicide and once again requiring major surgery to save her life. Upon her return to MCFP, after BOP pressured the hospital to release her to BOP care, she returned to the prison in a wheelchair unable to stand or even walk. She was in severe pain. BOP officials placed her in 4-point restraints for nearly 30-days.

27. BOP next transferred her to FMC Rochester, MN. There, BOP psychologists and psychiatrists would stabilize her medications, refer her to the prestigious Mayo Clinic's Transgender Clinic. A new Warden, David Paul, would arrive and instantly disliked her and complained of her lawsuits. Paul would seek her transfer her to USP Tucson, a men's prison, after USA Today requested to interview her

28. At USP Tucson, plaintiff would be brutally attacked and sexually harrassed, she was hospitalized with serious injuries in July 2019 and Jan. 2020 from her injuries. A separate Dec. 2019 attack left her injured, but not hospitalized. Two of her attackers were convicted sex offenders.

29. Still, BOP would not transfer her to a women's prison. Instead, after nearly a year in SHU it transferred her to USP-Coleman II in Florida again, a high-security men's prison.

30. At USP Coleman II plaintiff was violently attacked with a combination lock, again. She was seriously injured.

31. Still, BOP would not transfer her to a women's prison. Instead, it returned her to USP Tucson in May 2022.

32. In June 2022, a sexual predator - Tyone Brown - began trying to prostitute plaintiff and she filed a PREA complaint pursuant to 28 C.F.R. 115.51 and Brown was placed in SHU. SIS investigators determined Brown was a credible threat to plaintiff and might kill her. They recommended Brown be transferred.

33. Inexplicably, Warden Gutierrez - following an argument with plaintiff about prison conditions - released Brown from SHU. In less than 24 hours Brown attempted to murder plaintiff with a razor-studded weapon, on Sept. 14, 2022.

34. On or about 10-5-22 Gutierrez and SIS Lt. Christensen interviewed plaintiff threatening her with transfer and

prolonged housing in segregation if she did not
withdraw her lawsuits and civil claims against
staff. They did the same over a period of months
to several witnesses who testified, via Declaration,
in several of her cases before this Court. The
plaintiff declined to drop anything.

35. Knowing the plaintiff had done nothing wrong,
Gutierrez knowingly and intentionally created
a BOP document containing outrageous, scandalous,
Materially false statements about plaintiff to
secure her transfer. That document ~~[struck through]~~ contains
the following false statements:

- That plaintiff was involved in "illicit activities";
- That plaintiff was "conspiring to deal drugs and
  pimp transgender inmates";
- That plaintiff's "role" in the conspiracy was to
  remove "inmates from the unit by filing false
  PREA allegations against them";
- That plaintiff "would accept payment for these
  services";
- That plaintiff was "attempting to recruit other
  inmates to make false allegations against BOP
  staff regarding the treatment of transgender
  inmates."
- That plaintiff has "a long history" of "using her
  status as a transgender inmate to her benefit
  by filing false PREA allegations to remove any

148

inmate she has issues with";
- That "another investigation at USP Tucson in 2020, cleared the alleged perpetrator after a review of CCTV footage revealed Pinson had no contact with him";
- That plaintiff had been "throwing blood at a pregnant staff member";

36. As a career BOP employee, Gutierrez knew that under then-Program Statement 1210.24 - that it was a BOP Classification 1 Offense (BOP's most serious for staff) to create BOP documents containing false statements, particularly for a malicious purpose such as retaliation.

37. Gutierrez knew the false statements that he was submitting, to Assistant Director Linda Geter on 12/2/22 - relied principally upon the false statements of plaintiff's attacker - Tyrone Brown and an associate of Brown's - Daniel McNeal. Mr. McNeal would later testify, under penalty of perjury, that Gutierrez and Christensen pressured him to fabricate the false statements Gutierrez used.

38. Gutierrez did not ask Geter to transfer her for a women's prison, did not ask for even her to be transferred for her safety. Gutierrez requested BOP "Based on Pinson's history of disrupt behavior, a more restrictive environment is

14

required".

39. As a result of the transfer request, Plaintiff was transferred to USP Allenwood, a maximum security male facility where she has received death threats and sexual harrassment on a daily basis from inmates. Plaintiff is assigned to Allenwood's Secure Administrative Unit ("SAU") and arrived there on Jan. 2, 2024.

40. USP Tucson psychologist Samantha Licata informed plaintiff on Feb. 23, 2023 that Warden Gutierrez was using "false statements" to secure her transfer to the S.A.U. following a meeting with Dr. Ashley Noble at a "training" meeting a week prior by Licata.

41. The designation to the S.A.U. by BOP was formally made in late-November 2023.

Count II, Statement of Facts (Continuation from Page 4)=

7. Although P.S. 5100.08, Appendix A, classifies "Threatening Communications" as a "High" severity offense, BOP officials from 2007 to the present have classified Plaintiff as a "Greatest Severity" offender.

8. The consequence of this "Greatest Severity" misclassification, led BOP to apply 7 points to her "Base Scoring" under the "Male Custody Classification Form" pursuant to P.S. 5100.08 and to apply a "Greatest Severity" Public Safety Factor (hereinafter "PSF")

9. Under P.S. 5100.08, a "Greatest Severity" PSF is only applied to "a male inmate" according to Chapter 5, Pages 7-8 thereof.

10. Under P.S. 5100.08, BOP officials in 2007 applied a PSF for "Sentence Length" which is applied only to "a male inmate", according to P.S. 5100.08, Ch. 5, Pg. 9.

11. BOP's P.S. 5100.08 instructs its staff in Chapter 4 on Page 2 "SEX. Enter M = Male or F = Female."

12. In 2007 or 2008, BOP added "MAXIMUM CUSTODY" to plaintiff under P.S. 5100.08 which BOP assigns only to Male inmates.

13. From 5-7-07 to the present time of this Complaint, BOP has used the Male classifications described in Paragraphs 6-12 above.

14. Plaintiff requested via BOP's Administrative Remedy Program to be classified using the female version of P.S. 5100.08 which BOP denied declaring "you are a male inmate."

15. In November 2014, months after plaintiff was diagnosed with Gender Dysphoria, BOP promulgated a "Transgender Resource Guide" (hereinafter "the Guide").

16. The American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013)(hereinafter "DSM-5") explains the Gender Dysphoric patient experiences "clinically significant distress or impairment in social, occupational or other important

17A.

areas of functioning" that is associated with the feeling of incongruence between gender-identity and sex assigned at birth.

17. The World Professional Association of Transgender Health (hereinafter "WPATH") publishes a "Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People (7th ed. 2011)" (hereinafter "SOC").

18. The SOC contain six criteria for sex-reassignment surgery, which include, inter alia, "12 continuous months of living in a gender role that is congruent with their gender identity" and "if significant medical or mental health concerns are present they must be well controlled."

19. BOP even after publishing its 2014 Transgender Resource Guide, continued to persist in treating plaintiff contrary to the WPATH SOC and as "male" under P.S. 5100.08.

20. BOP refuses to allow plaintiff to wear female clothing.

21. BOP refuses to sell plaintiff cosmetic makeup, hair dye, and other hygeine items it sells offenders in its female facilities.

22. BOP refuses to house plaintiff in a female facility.

23. BOP staff, including plaintiff's own treating medical providers, refuse to use female pronouns. BOP claims this is due to a list of "reasons" including "Oversight, habit, mistake, and a lack of knowledge."

24. BOP refuses to permit plaintiff daily facial hair removal, while it permits such in its female facilities.

25. All of plaintiff's pat searches and strip-searches are conducted by cisgender male staff, though they are generally not allowed to do so in female facilities.

Count IV, Statement of Facts (Continued from Pg. 6):

5. Defendant Noble flew from Central Office to visit plaintiff at USP Tucson in mid-2023 at which point plaintiff voiced to Noble how Gutierrez, Zantout, Felix and Christensen had threatened her with retaliation if she didn't agree to drop her pending civil claims that went to trial in this Court in Sept. and November 2023.

6. Plaintiff also utilized electronic "Request to Staff" directly to Noble, Pullen, Robbins, Reynolds, Burkett, Lewis and both Leukefelds to alert them to Gutierrez, Zantout and other misconduct at USP Tucson in great detail as well as the threatened retaliation

7. BOP policy required Noble, Pullen, Robbins, Reynolds, Burkett, Lewis and both Leukefelds to "As soon as practicable, (but not later than 24 hours) Employees must] report to the (OIA or OIG)... any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule or regulation" in its Program Statement 3420.11 Gutierrez, Zantout and other USP Tucson staff misconduct and threats against plaintiff and her 2 civil-trial's witnesses, but these individuals failed to do so.

Sec. E, Request For Relief (Continued from Pg. 7):

2. Enjoining defendants from housing Ms. Pinson in a facility inconsistent with her gender identity (female);

3. Enjoining defendants from using Program Statement 5100.08 in a manner inconsistent with their gender identity, as to Ms. Pinson specifically all portions of 5100.08 that specify application to "male" inmates;

4. Enjoining defendants from classifying plaintiff as "MAXIMUM Custody";

5. Enjoining defendants from denying plaintiff cosmetic and hygeine items sold to inmates in female facilities;

6. Enjoing BOP, its staff, from orally and/or written use of male pronouns when referring to or addressing plaintiff;

7. Enjoining BOP, its staff, from refusing or failing to rely upon and use WPATH Standards of Care in treatment of its transgender population;

8. Declaratory Order stating that Program Statement 5100.08 is inconsistent with the WPATH Standards of Care;

9. Declaratory Order stating that Program Statement 5100.08 violates the Equal Protection Clause of the Fifth Amendment

10. Damages against individual defendants in amount = $5,000,000.00

20